## ERIKSSON v. GOODWIN et al.

(Circuit Court of Appeals, Second Circuit. April 30, 1907.)

### No. 245.

NEGLIGENCE—DEFECTIVE CAR COUPLING—FAILURE TO INSPECT.

 A train of cars loaded with sand and operated by defendants was being backed upon a pier for the purpose of dumping the sand into a scow which was hired by defendants, when the coupling between the locomotive and the first car broke, and the cars ran by their acquired momentum with such force against the bumper at the end of the track that the end car mounted the bumper and spilled its load upon the scow, injuring libelant, who was the wife of the owner and rightfully on the scow and at the place where the injury occurred. The evidence tended to show that the breaking of the coupling was due to improper handling of the cars by the engineer or to its defective condition. *Held* that, in either case, the defendants were chargeable with negligence, which rendered them liable for the injury, in the absence of any evidence to show the condition of the coupling, or that it had been recently examined to ascertain whether it was safe for ordinary use.

Appeal from the District Court of the United States for the Southern District of New York.

W. J. Martin and John F. Foley, for appellants.

Nelson Zabriskie and Hyland & Zabriskie, for appellee.

Before WALLACE, LACOMBE, and TOWNSEND, Circuit Judges.

PER CURIAM. As the witnesses in this case were examined in the presence of the district judge, and his conclusions upon the facts depend wholly upon the weight he gave to their testimony, and his opin-

ion of their credibility and intelligence, the case is not one in which it would be proper for the court to interfere with his findings of fact.

The libelant is the wife of the owner and master of a scow boat, and resided with him upon the boat, and, while the boat was receiving a load of sand from the appellants at their dumping trestle, she was injured by being struck with part of a car load which was prematurely dumped, and fell upon the place on the scow where she happened at the time to be, instead of the part of the boat where the sand ordinarily would have been dumped. The scow was in the usual place, under the dumping trestle, and was there by the implied invitation of the appellants who had been loading it with sand, and, after it had been loaded and had carried away its loading several times, her husband had returned for another load. Customarily the sand was brought to the dumping trestle by a train of cars belonging to the appellants and operated by their employés, and, when one of the cars was brought into the proper position, it was dumped from the side against a shield, and thus the sand was directed and thrown into the scow below. On the occasion in question the train consisted of six loaded cars attached to a locomotive which was backing them to the dumping place, and, when the train was some little distance away, the coupling between the locomotive and the car to which the locomotive was attached gave way, and the train by the momentum which it had previously acquired ran with such force against the bumper at the rear of the track and dumping place that the front car mounted the bumper, and spilled its contents on the boat below. If the coupling had not given out, the locomotive could have so regulated the movement of the train as to bring the cars safely into the proper position for being dumped.

The only question in respect to which there is any fair doubt is whether the district judge should have found the appellants guilty of negligence. The libelant was properly upon her husband's scow, and all those who were properly upon it were there upon the implied promise of the appellants to use reasonable care that they should not be subjected to any unnecessary danger during the loading operations.

The evidence indicates that the coupling gave way, either because it was so defective that it was unsafe for ordinary use, or because the engineer shut off the steam of the locomotive too abruptly. If the coupling was unsafe for ordinary use, and liable to break, although not subjected to any unusual strain, the appellants knew or were bound to know that it might give out at a critical time and under conditions similar to those in the present case. They were also chargeable with knowledge that, if it should give out under such circumstances, the safety of the persons upon a boat under the dumping place would be more or less jeoparded. Consequently they were under the duty of exercising ordinary care to ascertain whether it was in a reasonably fit condition for use upon the occasions when its use was required. No evidence of the slightest value was offered by them to show the previous condition of the coupling, or how long it had been in use, or that there had been any recent examination of it to ascertain whether it was safe for ordinary use. If it broke without being subjected

to any extraordinary strain by the act of the engineer in shutting off the steam of his engine too abruptly, the presumption is that it was not fit for ordinary use. On the other hand, if the coupling gave way because of the carelessness of the engineer, the defendants were liable because his negligence is to be imputed to them. Whether the accident happened from the one cause or the other, or from the combination of both, we think negligence was sufficiently established.

The judgment is affirmed, with interest and costs.